UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FARAH AMID,

                      Plaintiff,

            -against-

Police Officer THOMAS R. LAMB (in his
individual capacity), Police Sergeant
SHAUN C. MCKEE (in his individual
capacity), and Police Sergeant JEFFREY A. \
DOVE (in his individual capacity),

                      Defendants.

------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-3151

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAR 15 2016   ★

LONG ISLAND OFFICE

APPEARANCES:

    BALESTRIERE FARIELLO
    BY:    John G. Balestriere, Esq.
             Matthew W. Schmidt, Esq.
    Attorneys for Plaintiff
    225 Broadway, 29th Floor
    New York, New York 10007

    SOKOLOFF STERN LLP
    BY:    Steven C. Stern, Esq.
             Mark A. Radi, Esq.
    Attorneys for Defendants
    Thomas R. Lamb, Shaun C. McKee
    and Jeffrey A. Dove
    179 Westbury Avenue
    Carle Place, New York 11514

WEXLER, District Judge:

    Plaintiff, Farah Amid ("Plaintiff" or "Amid"), a homeowner in the Village of Old

Brookville, brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated her Constitutionally protected civil rights. Before the Court are Defendants' motion to dismiss Plaintiff's Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion.[1]

## BACKGROUND

Plaintiff, a resident of the Village of Old Brookville (the "Village"), alleges that on May 27, 2012, Defendant Police Officer Thomas R. Lamb ("Officer Lamb") and Defendant Sergeants Shaun C. McKee ("Sergeant McKee") and Jeffrey A. Dove ("Sergeant Dove") (collectively, "Defendants"), all members of the Village Police Department, arrived at Plaintiff's property and entered her residence without consent. (2d Am. Compl. ¶¶ 19, 21.) At the time of this incident, Plaintiff was engaged in a federal lawsuit against the Village Police Department and its Chief of Police. (Id. ¶ 20.)

After entering Plaintiff's residence, Defendants approached Plaintiff, who was inside the residence. (Id. ¶ 21.) Plaintiff immediately identified herself by first and last name. (Id. ¶ 22.) Plaintiff was not in any apparent distress and did not require any assistance from Defendants. (Id. ¶ 23.)

---

[1] This action was initially brought against several other defendants as well, including Glen Cove Hospital and three of its doctors (the "Hospital Defendants"), the Village of Old Brookville, and certain individual defendants (the "Individual Village Defendants"), who either reside in or are employed by the Village. Those Defendants also filed motions to dismiss Plaintiff's Second Amended Complaint. The Court held oral argument on all of the motions to dismiss on February 4, 2016 and, for the reasons stated on the record, dismissed all of the claims against the Hospital Defendants, the Village, and the Individual Village Defendants. The only claims that remain, which are the subject of the within opinion, are the Section 1983 claims against Defendants Lamb, McKee and Dove.

Defendants then began to search Plaintiff's entire residence, without her consent and over her protestations. (Id. ¶ 25.) Plaintiff repeatedly asked Defendants to leave her residence. (Id. ¶ 26.) When Plaintiff advised Defendants that she was going to telephone her attorney, Defendants forcibly grabbed Plaintiff and threw her to the ground, placing extreme pressure on her back and legs. (Id. ¶ 27.) Plaintiff's hands were then shackled very tightly, causing pain and bruising. (Id. ¶ 29.) While Plaintiff was handcuffed and lying on her stomach on the floor, one of the Defendants applied a device to Plaintiff's leg, causing a painful, burning sensation that left bruising on Plaintiff's ankle. (Id. ¶ 30.)

Thereafter, Plaintiff was placed in a vehicle, in handcuffs, and transported to Glen Cove Hospital (the "Hospital"). (Id. ¶ 32.) While at the Hospital, Plaintiff asked Sergeant Dove to loosen her handcuffs because they were too tight, but Sergeant Dove refused. (Id. ¶ 33.) Rather, Sergeant Dove placed his finger between the handcuffs and Plaintiff's wrist in order to cause further pain. (Id.) When Plaintiff asked Sergeant Dove whether he was simply trying to hurt and humiliate her, he replied "Yup." (Id.) Every time Plaintiff asked Sergeant Dove to either allow her to contact her attorney or to loosen her handcuffs, he replied "Nope," and put additional pressure on Plaintiff's handcuffs, causing Plaintiff further pain. (Id. ¶ 34.)

The above incident was not Plaintiff's first encounter with the Village Police Department. Rather, between 2009 and 2012, Plaintiff placed multiple calls to the Village Police Department to complain about vandalism to her property and issues pertaining to an ongoing dispute with her neighbors. (Id. ¶ 37.) Sergeant Dove reported to Plaintiff's residence on several occasions in connection with these complaints, during which times Plaintiff alleges that he was unreasonably hostile. (Id. ¶¶ 35-36.) According to Plaintiff, whenever she would place a call to the Village

Police Department, they would ignore and/or ridicule her request for assistance. (Id. ¶ 37.)

Plaintiff's Second Amended Complaint sets forth four remaining federal causes of action pursuant to 42 U.S.C. § 1983: (1) false arrest and imprisonment; (2) unlawful search; (3) excessive force; and (4) failure to intervene. Defendants seek to dismiss all four of the remaining causes of action.

DISCUSSION

I.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 556 U.S. at 678; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]'

devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.     Section 1983

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Accordingly, to prevail on any claim brought pursuant to Section 1983, "a plaintiff must demonstrate that he [or she] has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law." Tsesarskaya v. City of New York, 843 F. Supp. 2d 446, 454 (S.D.N.Y. 2012) (citing West v. Atkins, 487 U.S. 42, 48 (1988)) (additional citation omitted). There is no dispute here that the Defendants are state actors.

III.    False Arrest and Imprisonment

A Section 1983 claim for false arrest derives from an individual's right to be free from unreasonable seizures, including the right to be free from arrest absent probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). When analyzing a Section 1983 claim for false arrest, the Court generally looks to "the law of the state in which the arrest occurred," which, in this case, is New York. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004).

A false arrest claim pursuant to Section 1983 is "substantially the same" as a claim for false arrest or false imprisonment under New York law.[2] Jocks v. Tavernier, 316 F.3d 128, 134

---

[2] The torts of false arrest and false imprisonment are "synonymous" under New York law. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).

(2d Cir. 2003 (quoting Weyant, 101 F.3d at 852). To establish a claim for false arrest or false imprisonment under New York law, the plaintiff must demonstrate that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citations omitted). "The existence of probable cause is a complete defense to a § 1983 claim for false arrest." Jackson v. City of New York, 939 F. Supp. 2d 219, 229 (E.D.N.Y. 2013) (citing Weyant, 101 F.3d at 852) (additional citation omitted).

Probable cause is established "when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Figueroa v. Mazza, 59 F. Supp. 3d 481, 489 (E.D.N.Y. 2014) (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)). "Whether probable cause exists depends upon the reasonable objective conclusion to be drawn from the facts known to the arresting officer and those working with him or her at the time of the arrest." Figueroa, 59 F. Supp. 3d at 489 (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

Defendants contend that there was probable cause for their actions in restraining Plaintiff and taking her into custody based on Section 9.41 of the New York Mental Hygiene Law, which provides as follows: "Any . . . police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." N.Y. Ment. Hyg. Law § 9.41. The phrase "likely to result in serious harm" is defined under the Mental Hygiene Law as "a substantial risk of physical harm

to the person as manifested by threats or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself." N.Y. Ment. Hyg. Law § 9.01. The definition also includes "a substantial risk of physical harm to other persons as manifested by homicidal or violent behavior by which others are placed in reasonable fear of serious physical harm." Id.

As set forth above, to have probable cause to seize and detain a person for psychiatric evaluation, a police officer must have probable cause to believe that the person is a danger to herself or others. See Glowczenski v. Taser Int'l Inc., No. CV 04-4052, 2010 WL 1936200, at *6 (E.D.N.Y. May 13, 2010) (citing Bayne v. Provost, 2005 WL 1871182, at *6 (N.D.N.Y. Aug. 4, 2005)). Here, Defendants argue that the Village Police Department received a report that Plaintiff was contemplating suicide and that when they arrived at Plaintiff's home, she brandished a steak knife in their presence. (Def. Mem. of Law 22.) According to Defendants, these two factors provided them with probable cause to detain Plaintiff under the Mental Hygiene Law.

While Plaintiff does not dispute that she called a hotline for distressed homeowners facing foreclosure and stated that she was contemplating suicide, she does dispute that she ever brandished a weapon at the officers. (Pl. Mem. of Law in Opp'n 24.) Rather, the Second Amended Complaint states that "[w]hen the police officers first observed Plaintiff, she was in no apparent distress and did not require any assistance from said police officers." (2d Am. Compl. ¶ 23.) The Second Amended Complaint further states that "[a]t no time did the Plaintiff pose a danger to herself or the Police Officers by means of a dangerous weapon or otherwise." (Id. ¶ 28.) In fact, the only place a weapon is mentioned is in the officers' reports concerning the

incident with Plaintiff. (Radi Decl., Ex. B.)

Defendants argue that the Court may take judicial notice of the incident reports offered in support of the within motion. While it is true that the Court may consider these records in connection with Defendants' motion to dismiss, it may only do so "to establish their existence and legal effect, or to determine what statements [they] contained . . . not for the truth of the matters asserted." Liang v. City of New York, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (citations and internal quotation marks omitted) (alteration in original).

Moreover, with respect to whether or not Defendants had probable cause to detain Plaintiff, such a determination can only be made by the Court as a matter of law where "there is no factual dispute regarding the pertinent events and the knowledge of the officers." Jackson, 939 F. Supp. 2d at 229 (citing Singer, 63 F.3d at 118-19); see also Ampratwum v. City of New York, No. 11 Civ. 6111, 2013 WL 1935321, at *7 (S.D.N.Y. May 9, 2013) ("The question of whether probable cause existed may be determined as a matter of law . . . 'where there is no dispute as to what facts were relied on to demonstrate probable cause.'") (quoting Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007). Here, there is significant factual dispute between the parties as to what knowledge Defendants possessed at the time of the incident with Plaintiff. Given the disputed account of what transpired that day, the Court cannot determine that Defendants had probable cause to detain Plaintiff pursuant to the Mental Hygiene Law.

Based on the foregoing, the Court finds that Plaintiff has met her burden to sustain a claim for false arrest under 42 U.S.C. § 1983. Accordingly, Defendants' motion to dismiss is denied as to this claim.

IV. Unlawful Search

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (quoting Coolidge v. New Hampshire, 403 U.S. 474 (1971)); see also Anobile v. Pelligrino, 274 F.3d 45, 58 (2d Cir. 2001) ("Privacy expectations are high in homes . . . [and] homes receive the highest Fourth Amendment protections."). "Exigent circumstances provide an exception to the Fourth Amendment's warrant requirement." United States v. Klump, 536 F.3d 113, 117 (2d Cir. 2008) (citing Coolidge, 403 U.S. at 474-75).

The Court employs an objective test when determining whether exigence circumstances existed, which turns on "the totality of the circumstances confronting law enforcement agents in the particular case." Klump, 536 F.3d at 117 (quoting United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990) (en banc)). "The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer . . . to believe that there was an 'urgent need to render aid or take action.'" Klump, 536 F.3d at 118 (quoting MacDonald, 916 F.2d at 769) (internal citation omitted). The presence of exigent circumstances, however, "does not give government officials unfettered license to conduct a generalized search . . . ." Klump, 536 F.3d at 118. Rather, a search conducted without a warrant "must be strictly circumscribed by the exigencies which justify its initiation." Klump, 536 F.3d at 118 (quoting Mincey v. Arizona, 437 U.S. 385, 393 (1978)).

Plaintiff does not dispute that exigent circumstances existed - namely, her telephone call stating that she was considering suicide - permitting Defendants to enter her home without a warrant. (Pl. Mem. of Law in Opp'n 26.) Rather, Plaintiff challenges Defendants' search of her

"entire residence without warrant," while Plaintiff "verbally protested." (2d Am. Compl. ¶ 25.)

Given the significant factual dispute between the parties concerning the events of May 27, 2012, as noted above in connection with Plaintiff's false arrest claim, the Court cannot conclude at this point that exigent circumstances justified Defendants' warrantless search of Plaintiff's home. The Court finds that Plaintiff has adequately stated a claim for unlawful search in violation of the Fourth Amendment and Defendants' motion to dismiss this claim is denied.

V.  Excessive Force

Like false arrest and unlawful search claims, an excessive force claim brought pursuant to Section 1983 is also "judged under the Fourth Amendment's 'objective reasonableness' standard." Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012) (quoting Brosseau v. Haugen, 543 U.S. 194, 197 (2004)). A police officer's use of force is considered excessive, and in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation.'" Figueroa, 59 F. Supp. 3d at 489 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "The analysis considers the totality of the circumstances, 'including the severity of the crime at issue [and] whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest.'" Jouthe v. City of New York, No. 05-CV-1374, 2009 WL 701110, at *13 (E.D.N.Y. Mar. 10, 2009) (quoting Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000)). To succeed on an excessive force claim, a plaintiff must demonstrate that "the alleged use of force is objectively sufficiently serious or harmful enough to be actionable." Jackson, 939 F. Supp. 2d at 231 (citation and internal quotation marks omitted).

However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 405-06 (S.D.N.Y. 2009) (quoting Graham, 490 U.S. at 396). The Second Circuit and district courts within the Circuit "recognize the concept of 'de minimis' injury and, when the injury resulting from the alleged excessive force falls into that category, the excessive force claim is dismissed." Figueroa, 59 F. Supp. 3d at 489 (citation omitted). "Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." Id. (citing cases).

Here, Plaintiff alleges that Defendants "forcibly grabbed [her] and threw her to the ground, placing extreme pressure on her back and legs," and handcuffed her "very tightly, causing pain and bruising." (2d Am. Compl. ¶¶ 27, 29.) Plaintiff further alleges that while she was handcuffed and lying on her stomach on the floor, one of the Defendants[3] "applied a device to Plaintiff's leg causing a burning sensation which caused severe pain and bruising on Plaintiff's ankle." (2d Am. Compl. ¶ 30.) Finally, Plaintiff alleges that Sergeant Dove repeatedly placed his finger between the handcuffs and Plaintiff's wrist, placing additional pressure and causing Plaintiff further pain. (2d Am. Compl. ¶¶ 33-34.)

Defendants argue that Plaintiff's excessive force claim should be dismissed because her injuries are de minimis. (Police Officer Def. Mem. of Law 23-24.) While Plaintiff's injuries were certainly not life-threatening, the Court does not agree that they were de minimis, particularly in light of the allegation that Sergeant Dove purposefully and intentionally caused

---

[3] Plaintiff does not identify which of the Defendants she is referring to.

Plaintiff additional pain while handcuffed. Accordingly, the Court finds that Plaintiff has adequately pleaded a claim for excessive force. Defendants' motion to dismiss this claim is denied.

VI.     Failure to Intervene

"[I]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Figueroa, 59 F. Supp. 3d at 489 (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). A failure to intervene may give rise to liability under Section 1983. See Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997). However, liability may only attach where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jackson, 939 F. Supp. 2d at 232 (quoting Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

Defendants argue that Plaintiff's failure to intervene claim should be dismissed because she fails to distinguish between the alleged acts or omissions of the officers, claiming that all three both directly violated her constitutional rights and failed to intervene. (Police Officer Def. Mem. of Law 25.) While Defendants are correct that a law enforcement officer may not be held liable for failure to intervene where they are liable under a direct theory of participation, see Jackson, 939 F. Supp. 2d at 232 (citation omitted), Plaintiff is also correct that, at this point in the proceedings, she is permitted to plead in the alternative. However, the Court notes that at the

time of trial, after having had the benefit of discovery, Plaintiff will have to specifically identify which, if any, of the Defendants she seeks to hold liable under a failure to intervene theory.

Based on the foregoing, the Court finds that Plaintiff has pleaded a plausible claim for failure to intervene. Defendants' motion to dismiss this claim is accordingly denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in its entirety. The parties are reminded that jury selection is scheduled for a date to be determined in June 2016.

**SO ORDERED:**

Dated: Central Islip, New York
       March 15, 2016

                                                       /s/
                                        LEONARD D. WEXLER
                                        United States District Judge